UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 14-20383

v.

Honorable Nancy G. Edmunds

SYLVESTER BOSTON JR.,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT DUE TO PROSECUTORIAL MISCONDUCT [322]**

This matter comes before the Court on Defendant Sylvester Boston Jr.'s Motion to Dismiss the Indictment Due to Prosecutorial Misconduct. The Court held a hearing on this matter on February 8, 2018. The Court finds, for the reasons stated below, Boston Jr.'s post-plea claims lack merit and are dismissed.

**I.   Statement of Facts**

On July 1, 2014, a Grand Jury in this District (Grand Jury 14-1) returned an indictment against Defendant Sylvester Boston Jr. ("Boston Jr.") and several other defendants. The indictment charged Boston Jr. with conspiracy to possess with intent to distribute, to distribute and to manufacture BZP (Count 1); possession with intent to distribute BZP, based on an August 7, 2013 pill transaction (Count Six); and conspiracy to possess with intent to distribute and to distribute heroin (Count Seven).

On July 10, 2014, search warrants were executed at S&B Computers (and other locations) and Boston Jr. and several of his co-defendants were arrested.

On February 10, 2015, a different Grand Jury (Grand Jury 14-4) returned a Superseding Indictment against Boston Jr. and others. The government presented the case to Grand Jury 14-4 because Grand Jury 14-1's term had expired. During its presentation, the government republished the prior grand jury transcript by reading material portions of the prior testimony into the record. Some additional testimony was intermixed (primarily addressing the July 10, 2014 search warrant executions and arrests), and questions from Grand Jury were answered. Of relevance to Boston Jr., the Superseding Indictment added an 18 U.S.C. § 924(c) count (Count Two) based on weapons found at S&B Computers and another weapon found in Boston Jr.'s car.

About a year later, on February 18, 2016, Grand Jury 14-4 returned a Second Superseding Indictment (SSI). *(See* Dkt. 176.) The SSI clarified the Superseding Indictment for an anticipated trial of the remaining defendants—Boston Jr., his father, Sylvester Boston Sr., and Nikito Merchant—relying upon on the prior grand jury testimony. Of relevance to Boston Jr., the SSI added a new count (new Count 2), which addressed Boston Jr.'s July 8, 2013 distribution of ecstasy (BZP) pills to co-defendant Broaden (who, in turn, delivered the pills to co-defendant Burt). The SSI also altered the charge that dealt with the August 7, 2013 pill delivery (Count 4), changing it from a PWID (possession with intent to distribute) count to a straightforward distribution count as it related to Boston Jr.

Finally, on May 3, 2016, a Third Superseding Indictment (TSI) was returned by Grand Jury 14-4. (*See* Dkt. 196.) The TSI added co-defendant Merchant to the 18 U.S.C. § 924(c) count; it changed nothing with respect to Boston Jr.

After more delays (all but one attributable to Boston Jr. and his co-defendants), trial was finally set to begin on July 11, 2017. The day before trial—July 10, 2017—Boston Jr. pled guilty.

Over four-and-a-half months later, Boston Jr. filed the instant *pro se* motion to dismiss the indictment. The motion claims that the indictment was procured by prosecutorial misconduct, specifically that the government: (a) presented materially false testimony to the Grand Jury; and (b) allowed the case agent to mislead the Grand Jury and/or testify falsely. Boston Jr. also appears to claim that the government improperly presented unspecified testimony derived from an unlawful search warrant.

## II. Analysis

### 1. Boston Jr. Is Not Entitled To Hybrid Representation

As the government submits, there is no right, constitutional or otherwise, to "hybrid representation – the representation at the same time by counsel and *pro se*." *United States v. Trapnell*, 638 F.2d 1016, 1027 (7th Cir. 1980); *United States v. Cromer*, 389 F.3d 662, 682 n.12 (6th Cir. 2004). Boston Jr. has two attorneys, although one he has accused of ineffective assistance of counsel. (Dkt. 321.) Neither were willing to file the instant motion because it is legally unjustified and appears to be an attempt by Boston Jr. to delay (yet again) the proceedings (while he remains free on bond).

### 2. Boston Jr.'s Post-Plea Motion is Untimely

Boston Jr.'s motion is untimely. Motions to dismiss based on "an error in the grand jury proceeding"—including allegations that the prosecutor presented false testimony to the grand jury—must be made pretrial as long as the motion was reasonably available. Fed.

R. Crim. P. 12(b)(3)(A)(v); *United States v. Edmond*, 815 F.3d 1032, 1042 (6th Cir. 2016), *rev'd on other grounds* 137 S. Ct. 1577 (2017); *United States v. Rowe*, 2014 WL 1577012, at *2 (E.D. Ky Apr. 16, 2014) (motion untimely after defendant pled guilty); *United States v. Garza*, 2016 WL 1594375, at *1 (E.D. Mich. Apr. 21, 2016).

Here, Boston Jr. filed his motion over four months after he pled guilty and he cannot (and does not) claim that the basis of his motion was not reasonably available before he pled guilty. The grand jury transcripts were turned over to Boston Jr. two weeks before he pled guilty. During this time period, Boston Jr. had two attorneys working on his case. *See* June 30, 2017 D/E (documenting that attorney James Howarth had accepted the Court's CJA appointment); *see also United States v. Baty*, 2015 WL 6470955, at *1 (E.D. Mich. Oct. 27, 2015) (concluding that the defendant's post-trial motion to dismiss the indictment was untimely where, like here, the recording that provided the basis for the post-trial motion was turned over to defendant's counsel several weeks before trial). And, the video-recorded telephone call that Boston Jr. submitted in support of his motion to withdraw his guilty plea unambiguously shows that he was aware of what he referred to as the many alleged "fabrications" and "lies" contained in the grand jury transcripts before he pled guilty.

Boston Jr.'s motion was "reasonably available" pretrial and Boston Jr. has not established good cause for the four-and-a-half month post-plea delay. *See* Fed. R. Crim. P. 12(c)(3).

    3. Boston Jr.'s Motion is Legally and Factually Deficient

Even if Boston Jr.'s motion was timely, it is legally and factually deficient.

    a.    The Indictment, Which is Valid on its Face, Was Returned by a Legally Constituted and Unbiased Grand Jury

4

Grand jury indictments are presumed to be valid; accordingly, courts must exercise extreme caution before potentially dismissing an indictment for alleged misconduct before the grand jury. *United States v. Overmyer*, 899 F.2d 457, 465 (6th Cir. 1990); *United States v. Toatley*, 2 F. App'x 438, 442 (6th Cir. 2001). This Court held in *United States v. Beasley*, the Sixth Circuit has consistently held—even in the face of allegations that an AUSA presented "perjured testimony" to the grand jury—that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial on the charge on the merits." *United States v. Adamo*, 742 F.2d 927, 935-36 (6th Cir. 1984) (discussing *Costello v. United States*, 350 U.S. 359 (1956) and its progeny); *United States v. Beasley*, 2014 WL 4545652, at *3 (E.D. Mich. Sept. 12, 2014) (Edmunds, J.); *United States v. Tyler*, 2008 WL 4377803, at *2 (E.D. Mich. Sept. 22, 2008) (Cox, J.). The Fifth Amendment requires nothing more. *Beasley*, 2014 WL 4545652 at *3 (citing *Costello*).

Here, like *Adamo* and *Beasley*, there is no claim that the grand jury was not "legally constituted"; nor is there a claim that the indictment was not "valid on its face." *Adamo*, 742 F.2d at 936; *Beasley* 2014 WL 4545652 at *3. Instead, just like *Adamo* and *Beasley*, there is simply a claim that the Grand Jury was made biased by the testimony elicited by the AUSA (and given by the case agent). *Id.* But, the Sixth Circuit has stated that "bias" in this context refers to a Grand Jury that is predisposed, one way or another, *at the time of their selection*. *Id.* Boston Jr. makes no such claim and, as such, his motion is not valid under the legal authority set forth in *Costello*, *Adamo* and *Beasley*.

    b.    The Record Does Not Support Any Prosecutorial Misconduct, nor Misconduct Warranting Dismissal of the Indictment

<u>Allegations regarding an unlawful search warrant</u>

5

Although not entirely clear, it appears that Boston Jr. first complains that the government presented testimony to the Grand Jury that was derived from an unlawfully obtained search warrant (one that allowed law enforcement to attach a tracking device to the pill press delivered to S&B Computers). Alternatively, Boston Jr. may be alleging that the search warrant itself was invalid.

The time for raising Fourth Amendment challenges to search warrants ended long ago. *See* Fed. R. Crim. P. 12(b)(3)(C) (requiring motions to suppress to be filed, at the latest, pre-trial). Boston Jr., having voluntarily pled guilty, can no longer raise Fourth Amendment challenges to the legality of a search. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Kirksey*, 118 F.3d 1113, 1115 (6th Cir. 1997).

Moreover, the Supreme Court has held that the exclusionary rule may not be invoked to bar questioning before a grand jury based on evidence allegedly obtained in an unlawful search and seizure—the validity of an indictment is simply not affected by the character of the evidence considered. *Beasley*, 2014 WL 4545652, at *5-6 (discussing *United States v. Calandra*, 414 U.S. 338 (1974)); *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 298 (1991) (recognizing that, under *Calandra*, the exclusionary rule does not apply to grand jury proceedings); *Stone v. Powell*, 428 U.S. 465, 485 (1976) (explaining that the Fourth Amendment "does not prevent the use of illegally seized evidence in grand jury proceedings"); *United States v. Nichols*, 979 F.2d 402, 410 (6th Cir. 1992) (noting that the Supreme Court has refused to apply the exclusionary rule to grand jury proceedings).

<u>Testimony Regarding Delivery of a Pill Press to a Computer Store</u>

Boston Jr. complains that when the case agent summarized how the investigation began (through seizure of a falsely manifested and unregistered pill press that was

6

ultimately delivered to Boston Jr. and his cohorts), she referred to the entity listed on the shipping invoice as S&B Computers, a computer store, rather than "S&B Computers and Herbal Goods" – an "herbal goods" store.[1] Boston Jr. argues that the testimony is materially inaccurate because an "herbal goods" store (unlike a computer store) could have a legitimate use for a pill press.

However, the shipping invoice was presented to the Grand Jury and it states "S&B Computers & Herbal Goods." Also the add of "herbal goods" to the end of S&B Computers does not change the relevant testimony. The pill press was falsely manifested. The pill press was not registered with the DEA. The pill press was still shipped to a vacant storefront. The shipment was still ordered using a fictitious name—comedian Tracy Morgan. Boston Jr. and his father still set up the delivery, changing the delivery location to S&B Computers' Lodge Freeway storefront while pretending to be "Tracy Morgan." And, Boston Jr. still accepted delivery of the pill press, again pretending to be Tracy Morgan. This evidence was accurate and relevant as both background evidence and Boston Jr.'s knowing participation in the conspiracy.

Finally, S&B Computers was held out as a computer repair store, not an "herbal goods" store. The company's sign read "computer repair service," and its article of incorporation, its lease agreement, and its voicemail message all referred to the company as S&B Computers.

<u>Statements Given By Cooperating Defendant</u>

---

[1] Boston Jr. when quoting passages from the grand jury transcript, at times, eliminates certain testimony without informing the reader that testimony has been omitted. *See, e.g.*, Page ID 1339 (question and answer at top of page); Page ID 1340 (both questions and answers).

7

Boston Jr. asserts that various statements made by the Cooperating Defendant (CD) (summarized by the case agent before the Grand Jury) were false and/or inconsistent. There is nothing inaccurate or misleading in the case agent's testimony. The agent's summary tracks what the CD told law enforcement during multiple debriefings (which was subsequently corroborated by recorded statements/transactions, surveillance, and other evidence). Thus, no perjured or false testimony was presented.

Instead, Boston Jr.'s allegations of "false" testimony reflect his misguided view that the CD was not credible and/or that his statements were inconsistent. But, all of these alleged issues could have been properly explored on cross-examination if and when the CD testified at trial. Boston Jr.'s attorneys could have asked the CD about the two prices that the CD referenced regarding kilograms sales of Molly powder ($3,500 versus $9,000). They could have asked the CD about the location where the CD claimed he purchased Molly and explored anything that did not make sense.[2] Cross-examination is the appropriate forum for these arguments; not a grand jury investigation. A federal prosecutor is not required to present exculpatory evidence to the grand jury and a defendant is not entitled to challenge an indictment on the ground that information which the defendant considers to be favorable to his defense was not presented to the grand jury. *Adamo*, 742 F.2d at 937 (discussing *United States v. Ruyle*, 524 F.2d 1133 (1975)); *United States v. Davis*, 714 F. Supp. 853, 868 (S.D. Ohio 1988) (a prosecutor is under no obligation to present exculpatory evidence to the grand jury); *United States v. Nelson*, 486 F. Supp. 464,

---

[2] Contrary to that alleged by Boston Jr., neither the CD nor the case agent (when testifying before the Grand Jury) ever stated that the CD purchased Molly powder from a specific location; he simply stated he purchased a kilogram of Molly powder (packaged in potato chip bags) five months earlier.

8

475 (W.D. Mich. 1980) (the government is not obligated to present the grand jury information favorable to the defendant).

Testimony Regarding the Lab Results from July 29, 2013

Next, Boston Jr. asserts that the indictment should be dismissed because, when the case agent testified regarding a lab result from one of the many pill/powder recoveries in the case (the July 29, 2013 Molly powder distribution), she mistakenly referred to the test result generically as testing positive for "Molly MDMA," rather than "BZP," which the lab result actually stated. Boston Jr. claims that the testimony is materially false and misleading, *Brady* misconduct, and shows that the case agent was "clearly on board with the CI in a plot to Fraud the Court." (Dkt. 322 at 9, Page ID 1343.) While the case agent admittedly made a mistake when testifying (referring to the lab result generically as "Molly MDNA" instead of BZP"), there was no perjury, no materially misleading statement, and no prejudice to Boston Jr..

This case was always about a father (Boston Sr.) and son (Boston Jr.) who sold what they always referred to as ecstasy pills and Molly powder. The controlled substance that the duo used when making the ecstasy pills was a synthetic controlled substance commonly utilized by "ecstasy" manufacturers—BZP. BZP was purchased by the conspirators in powder form (commonly referred to as Molly powder) and manufactured into "ecstasy pills."

BZP was the only controlled substance involved when the case was presented to the Grand Jury and the only controlled substance that was ever listed in indictment with respect to the pill/powder counts. The case agent explained to the Grand Jury that BZP:

(a) was the controlled substance identified in the indictment; and (b) is a controlled substance that has stimulant properties commonly associated with ecstasy. Indeed, when the case agent testified about the 2,080 pills that Boston Jr. distributed to co-defendant Broaden on July 8, 2013, she informed the Grand Jury that the pills testified positive for BZP, and thus they were "essentially ecstasy-type pills." There was never any confusion about what this case was about – the distribution of Molly powder and ecstasy pills in which BZP was the controlled substances utilized. This is also how the defendants themselves referred to the product—as Molly powder and ecstasy pills.

Moreover, during her Grand Jury testimony, the case agent testified about multiple seizures of powder and pills; each time (except for the July 29, 2013 transaction), she correctly referred to the lab results testing positive for BZP (rather than the generic reference to Molly MDMA).

When the testimony was republished to Grand Jury 14-4 in conjunction with the Superseding Indictment, the case agent clarified (upon receiving a question from a Grand Juror) that BZP is a controlled substance that is referred to generically as Molly or ecstasy.

The only incorrect testimony presented to the Grand Jury was that, when the case agent testified about the Molly powder distributed by Sylvester Boston Sr. (not Boston Jr.) on July 29, 2013, the agent incorrectly referred the lab result as testing positive generically for "Molly MDMA," rather than the specific controlled substance listed in the lab report, "BZP." Boston Jr. did not suffer any prejudice from this misstatement and the Grand Jury was not biased in any way. There is no dispute that the powder distributed on July 29, 2013 did actually test positive for a controlled substance (BZP), the very controlled substance

identified in each of the pill/powder counts of the indictment (including the specific substantive count dealing with the July 29, 2013 transaction). Moreover, the grand jury presentation contained testimony regarding the repeated seizure of ecstasy pills and Molly powder that tested positive for BZP, including the May 23, 2013 trash pull, the May 31, 2013 trash pull, the July 8, 2013 distribution of over 2,080 pills by Boston Jr., the August 7, 2013 distribution of 2,400 pills by Boston Jr., the April 4, 2014 pill distribution, the July 1, 2014 pill distribution and the over kilos of pills and powder seized on July 10, 2014 when Boston Jr.'s drug trafficking operation was taken-down. The Grand Jury presentation also included additional testimony (*e.g.*, testimony surrounding the delivery of the pill press) that overwhelmingly demonstrated Boston Jr.'s knowing participation in the conspiracy. Boston Jr. was not even separately charged with the July 29, 2013 distribution; instead, he was charged with a drug conspiracy involving BZP (to which he pled guilty) and two substantive pill transactions involving BZP (occurring on July 8, 2013 and August 7, 2013), each of which were overwhelming supported by the testimony presented to the grand jury (including, as noted above, lab results that tested positive for BZP). The Grand Jury was also told that BZP is a controlled substance that is commonly referred to as ecstasy/Molly. As the Sixth Circuit Criminal Pattern Jury Instruction 14.05 provides, to be guilty of a drug trafficking conspiracy under 21 U.S.C. § 846, Boston Jr. did not even have to know that the drug involved was BZP. It is enough that he knew that the material was some kind of controlled substance.

The Grand Jury testimony overwhelmingly supported the conspiracy charge to which Boston Jr. pled guilty. All Boston Jr. does is speculate that "but for" the testimony that the

July 29, 2013 powder tested positive for "Molly MDMA," rather than "BZP," the grand jury would not have returned an indictment against him. But, as this Court observed in *Beasley* (and the Sixth Circuit observed in *Adamo*) "these types of 'but for' contentions are 'sheer speculation.' It is enough . . . [as here] that there is some competent evidence to sustain the charge issued by the Grand Jury even though other evidence before it is incompetent or irrelevant in an evidentiary sense or even false." *Beasley*, 2014 WL 4545652 at *5 (quoting *Adamo,* 742 F.2d at 939)); *see also Toatley*, 2 F. App'x at 441-42 (the defendant in *Toatley*, like Boston Jr. here, merely offers "unguided speculation" that the grand jury indicted him on the basis of incorrect or improper testimony, which cannot form a basis to overturn the grand jury's indictment, particularly where, as here, Boston Jr. admitted his was guilty of the charge at his plea hearing).³

Boston Jr.'s motion also attempts to portray the situation as one in which the government knowingly presented perjured testimony to the Grand Jury. Although none was presented, even if perjured testimony had been knowingly presented, the Sixth Circuit has held that a prosecutor in such a situation must simply weigh the "untainted evidence" supporting the indictment and decide if (as here) a jury could unanimously find that the

---

³$The last two instances of "false testimony" (dealing with testimony regarding weapons seized) are also immaterial and non-prejudicial. Boston Jr. did not plead guilty to a gun charge. The 924(c) count, moreover, only involved weapons found at S&B Computers and in Boston Jr.'s vehicle (not the Bonstelle residence). And, the testimony made clear that Boston Jr. was, in fact, driving his car shortly before he was arrested with a weapon in his car. While it true that Boston Jr, his girlfriend, and two other individuals were not arrested as part of a "traffic stop" (instead, they had exited the car, entered a deli, and were arrested as they were walking back to Boston Jr.'s car), this fact was immaterial. Boston Jr. was driving the car; he picked up a package that contained dies for the pill press, placed them in his truck and drove to the restaurant, where his car was found with a gun in the glove compartment. Those are the material facts; it is simply irrelevant whether Boston Jr. was stopped as he walked back to his car, or whether as part of a "traffic stop."

untainted evidence established the defendant guilty beyond a reasonable doubt. *Adamo*, 742 F.3d at 940-41. Indeed, a defendant like Boston Jr. would need to establish "actual prejudice." *Id*. Here, no prejudice can conceivably exist—the lab report complained of (related to the July 29 powder distribution) actually tested positive for BZP, the very controlled substance listed in every count in the indictment (including the conspiracy count) and the very controlled substance to which Boston Jr. knowingly pled guilty. The evidence in this case, including the evidence presented to the Grand Jury, overwhelmingly established Boston Jr.'s guilt (as he admitted at his plea hearing). No prejudice exists.

    4. The Court's Supervisory Authority

Finally, Boston Jr. also seems to suggest that the Court should exercise its inherent authority to dismiss the indictment. As this Court explained in *Beasley*, a district court can dismiss an indictment based on the court's supervisory power only where, a defendant demonstrates that (1) prosecutorial misconduct is a long-standing or common problem in grand jury proceeding in the district and (2) the defendant was prejudiced by the prosecutor's actions. *Beasley*, 2014 WL 4545652 at *7 (quoting *United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir. 1985)). Boston Jr.'s motion does not allege or offer proof that the prosecutors in this District have a history of abusing the grand jury process. Further, Boston Jr. cannot show that he was prejudiced by alleged prosecutorial misconduct in the Grand Jury proceedings. Simply stated, nothing in the record supports the notion that any misconduct undermined the Grand Jury's ability to make an informed and objective evaluation of the evidence presented to it. *Id*.

**III.    Conclusion**

For the foregoing reasons, Boston Jr's motion to dismiss the indictment is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 14, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 14, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager