UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

Case No. 14-20383-2

Honorable Nancy G. Edmunds

v.

SYLVESTER BOSTON JR.,

    Defendant-Petitioner.

                                         /

**OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE [374]**

Defendant-Petitioner Sylvester Boston, Jr. filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 and memorandum in support. (ECF No. 374, 378, 385.) The United States filed a response. (ECF No. 382.) Defendant filed a reply, an exhibit under seal, and a supplement of errors. (ECF No. 383, 384, 385.) This Court is familiar with the previous proceedings, and has reviewed the pleadings and supporting documentation. The motion, briefs, materials submitted by the parties, and the records of the case conclusively show that the Defendant is entitled to no relief; the Court finds that an evidentiary hearing on this matter is not necessary. *See* 28 U.S.C. § 2255(b); *see also Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (no evidentiary hearing is necessary if the defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). The Court being sufficiently advised, it hereby denies Defendant's motion to vacate,

set aside or correct his sentence.

**I.     Background**

A grand jury returned an indictment against Defendant and eight others on July 1, 2014. (ECF No.1.) On May 3, 2016, the grand jury returned a third superceding indictment against Defendant, his father Sylvester Boston, Sr., and one other defendant. (ECF No. 196.) On July 10, 2017, Defendant pleaded guilty to Count One of the Third Superceding Indictment pursuant to a Rule 11 plea agreement. (Rule 11 Plea Agr., ECF No. 298.) Count One is conspiracy to possess with intent to distribute, to distribute and to manufacture controlled substances, to wit: Benzylpiperazine (BZP). (Rule 11 Plea Agr., ECF No. 298.)

The factual basis for Defendant's guilty plea as set forth in the Rule 11 agreement includes the following:

> That between January, 2013 and July, 2014, the defendant conspired with other co-defendants, including but not limited to Sylvester Boston, Sr., Nikito Kruchev Merchant, Jr., Rodney Duane Reaves, and others, to possess with the intent to distribute, to distribute, and to manufacture pills containing Benzylpiperazine (BZP) (commonly referred to as ecstasy pills) and powder containing BZP (commonly referred to as Molly powder).
>
> It was part of the overall agreement that the defendant and his father, Sylvester Boston, Sr., ordered a high-end pill press from China, and, in May, 2013, had it delivered to defendants' business, S&B Computers, located in Detroit, Michigan. Thereafter, the defendant manufactured Molly/ecstasy pills, at S&B computers, using the pill press (and another pill press), including with the assistance of Nikito Merchant and others. As part of the agreement, defendant also participated, along with Sylvester Boston Sr, Nikito Merchant, Rodney Reaves and others, in the distribution of both Molly/ecstasy pills and Molly powder to others (from S&B Computers).
>
> Defendant and each of his co-conspirators (including co-defendant Merchant) specifically knew that the Molly powder and Molly/ecstasy pills manufactured and sold from S&B Computers contained an unlawful controlled substance and specifically knew that the pills were manufactured using both the controlled substance and filler material (including caffeine).

> On July 10, 2014, law enforcement agents and officers executed a search warrant at S&B Computers in Detroit. Among other things, agents recovered two pill presses, tens of thousands of Molly/ecstasy pills and kilograms of Molly powder.
>
> The parties stipulate that this conspiracy involved in excess of 58,000 grams of BZP, as reflected in the attached worksheets. The defendant and his co-conspirators entered into this agreement with full knowledge and intent to possess with the intent to distribute, and to distribute and to manufacture Molly/ecstasy pills and Molly powder.

(Rule 11 Plea Agr. 2-3, ECF No. 298.)

Nearly five months after Defendant pled guilty, on November 29, 2017, he filed motions to withdraw his guilty plea and to quash and dismiss indictments; he filed both motions himself, though he was represented by counsel at the time. (ECF Nos. 321, 322.) The Court heard both motions on February 8, 2018, and issued separate orders denying the motions on February 14, 2018. (ECF Nos. 346, 347.) Defendant's then-attorney was present at the hearing. (ECF No. 381.) On February 16, 2018, Defendant's counsel filed a motion for leave to withdraw as counsel, which the Court granted on February 28, 2018. (ECF Nos. 349, 353.) On March 23, 2018, Defendant filed a notice of termination of counsel as to this same counsel. (ECF No. 359.) This lawyer was Defendant's fourth. (ECF Nos. 27, 123, 150, 216, 362 p. 2.) On April 3, 2018, Defendant filed his own motion to dismiss the indictment for lack of subject matter jurisdiction. (ECF No. 361.) On April 5, 2018, Defendant's remaining counsel, appointed as a second attorney prior to the guilty plea, filed a sentencing memorandum. (ECF Nos. 293-94, 381 p.8, 362.)

On April 10, 2018, the Court sentenced Defendant to a total of 108 months, followed by three years of supervised release. (Judgment, ECF No. 364.) Defendant did not file an appeal. On April 25, 2019, the Court docketed Defendant's motion to vacate sentence

under 28 U.S.C. § 2255. (Pet'r's Mot., ECF No. 374.) The § 2255 motion is dated April 10, 2019. (ECF No. 374 at 13.) Defendant's request for extension of time to file a Memorandum of Support was granted and Defendant filed his memorandum on June 26, 2019. (ECF No. 378.) The bases for Defendant's motion allege (1) that the government "potentially fabricated evidence" and changed drug types and weights, (2) ineffective assistance of counsel, and (3) that the government used entrapment to involve Defendant and his father in a criminal act. (Grounds One - Three, ECF No. 374.)

## II.     Standard

28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "It is well-established that a § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citations omitted). "[C]laims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). And "[i]t is equally well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

Defendant did not take a direct appeal and he waived his right to appeal in his Rule 11 plea agreement. *See Rivera v. Warden, FCI, Elkton*, 27 F. App'x 511, 515 (6th Cir. Nov. 20, 2001) (citing *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996)). However, "ineffective-assistance claims are subject to review in the district court, having been timely raised in the petitioner's § 2255 motion." *See Jackson v. U.S.*, 45 Fed. Appx. 382, 385 (6th Cir. 2002) (citing *Hughes v. United States*, 258 F.3d 453, 457, n.2 (6th Cir. 2001) (holding that petitioner did not procedurally default his ineffective assistance of counsel claim by failing to raise it on direct appeal)). The breadth of the claims of violations which Defendant presents in his motion appears to be an attempt to argue substantive claims, including those for which he waived consideration by his Rule 11 Agreement, and avoid procedural default by couching them as ineffective assistance of counsel claims in his memorandum.

## III. Analysis

### A. Ineffective Assistance of Counsel

The *Strickland* analysis applies to claims of ineffective assistance of counsel. *Strickland* requires a petitioner to show: (1) counsel's performance was deficient by falling "below an objective standard of reasonableness" and (2) counsel's deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 688, 693-94 (1984). To demonstrate prejudice, Defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

There is a strong presumption in favor of counsel's effectiveness. *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (holding that counsel's performance be examined

5

"from counsel's perspective at the time of the alleged error and in light of all the circumstances," a highly deferential standard) (internal citation omitted). The Supreme Court has advised that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges"; it could threaten the adversarial process that the Sixth Amendment right to counsel was designed to serve. *See Strickland*, 466 U.S. at 689-90.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citations omitted). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Id.* "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* at 163. The Supreme Court noted that in a prior case, "when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 163 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

### 1. Plea and Guidelines Range

As an initial matter, Defendant argues that he was sentenced at the top of the guideline range at 108 months and that his attorney was "therefore ineffective for failing to

object to the government's breach of the plea agreement during sentencing" when his sentence exceeded the midpoint of the guideline range recommended by the attorney (87 to 108 months). (Pet'r's Supp. Br. 3, ECF No. 378.) To show prejudice in the sentencing context, Defendant must show a reasonable probability that but for counsel's errors, his sentence would have been different. *See Bradshaw-Love v. Warren*, 2017 WL 6541144, at *4 (6th Cir. Dec. 15, 2017).

The Rule 11 plea agreement language is consistent with the judge's explanation at Defendant's plea hearing. The judge was clear, as is section 2.B of the plea agreement, that the parties disagreed as to the applicability of three different two-point enhancements, under 2D1.1(b)(1), 2D1.1(b)(12), and 3B1.1 and the plea agreement contemplated that the Court would make a determination as to which range is applicable. (Rule 11 Plea Agr., § 2.B, ECF No. 298 at 5.) The plea agreement states that if the Court's enumerated findings result "in a guideline range higher than **168 to 210 months** (or **87 to 108 months** if Court agrees with defendant as to the applicability of §§ 2D1.1(b)(1), 2D1.1(b)(12, and 3B1.1), the higher guideline range becomes the **agreed range**." (Rule 11 Plea Agr., ECF No. 298 at 5-6, emphasis in original.) Where the probation department and the Court calculated a guideline range from 168 to 210 months, and the Court sentenced Defendant to 108 months, well below the mid-point of this range, indeed, below even the low-end of that range, Defendant cannot show that counsel's performance fell below an objective standard of reasonableness when counsel did not object to the sentence during the sentencing. (Rule 11 Plea Agr. 3.A, ECF 298, at 6.) Further, Defendant did not show that there is a probability that his sentence would have been different had counsel objected.

**2. Counsel's Failure to File a Motion To Withdraw Guilty Plea**

Defendant argues that trial counsel rendered ineffective assistance by allegedly coercing him to enter a guilty plea. Defendant provides with his § 2255 memorandum a copy of a transcript of a phone call he allegedly recorded between himself and his attorney, which he identifies as evidence that his attorney gave him false and misleading information and frightened him into entering a guilty plea. (Pet'r's Memo. In Support, Ex. 1, ECF No. 378; ECF No. 378 at 2.) The substance of this transcript was the subject of Defendant's earlier motion to withdraw guilty plea due to ineffective counsel. (ECF No. 321.) The Court heard and considered this issue and denied Defendant's motion. (ECF No. 346.)

As set forth in the Court's order on the prior motion to withdraw guilty plea, at the plea hearing Defendant affirmed under oath that he had discussed the matter of the plea with his attorney and was satisfied with his attorney's advice and service. (Plea Hearing Tr. 6, ECF No. 324.)  He was further informed that he had the right to plead not guilty and have a trial before the Court or a jury, including that he would be presumed innocent at a trial, and have the right to question witnesses and to have the Court order witnesses for his defense. (ECF No. 324 at 7.) When asked if anyone had "coerced" him to plead guilty, Defendant responded "No." (ECF No. 324 at 15.) Defendant testified to the following factual basis for his plea: "I agreed with other people to distribute a measurable amount of Benzylpiperazine," further notifying that this occurred within the City of Detroit and that he knew it was an illegal drug. (ECF No. 324, at 16.)

The Court cannot find that counsel performed below an objective standard of reasonableness in not filing a motion to withdraw the plea. Even if counsel had erred in failing to file a motion to withdraw the plea, Defendant cannot show prejudice; there is no

8

basis to believe that had counsel filed a motion for withdrawal, the result of his proceeding would have been different. The Court already heard and considered the same claim when Defendant attempted to withdraw his plea on the same basis: ineffective assistance and coercion, and the Court denied it. (ECF No. 346.) There is not new evidence related to Defendant's allegation. On November 29, 2017, just over four months after entering his plea, Defendant, acting without his counsel, filed a motion to withdraw his guilty plea due to ineffective assistance of counsel. (Mot. To Withdraw, ECF No. 321.) The Court held a hearing on Defendant's motion, in addition to his motion to quash indictment, on February 8, 2018, at which his appointed counsel was present[1]. (ECF No. 381.) The Court denied both motions by written orders dated February 14, 2018. (ECF Nos. 346, 347.) Two days later, Defendant's lead attorney filed a motion to withdraw from his case; the motion was granted on February 28, 2018. (ECF 353.)

The Court considered Defendant's argument for withdrawal and there is no basis, in this instance, to find that a motion to withdraw guilty plea on the same basis would have been more successful filed yet again, by counsel. Defendant's counsel is not required to raise frivolous arguments. *See Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does not

---

[1] This was the third of Defendant's attorneys. On November 7, 2016, R. Burkett filed a motion for leave to withdraw as counsel. (ECF No. 243.) The Court heard this motion on November 11, 2016, denied counsel's motion, and appointed counsel Burkett to represent Defendant as federal defender. (ECF No. 250.) With a jury trial scheduled for July 2017, in June 2017, Defendant made another motion to replace counsel Burkett. (ECF No. 289.) The motion was denied yet the Court appointed an additional attorney to represent Defendant with attorney Burkett. (ECF No. 293-94.) Defendant pleaded guilty at a hearing before Judge Paul D. Borman on July 10, 2017. (ECF Nos. 298, 324.)

exist."). As the government points out, the Defendant's alleged bases for withdrawing the plea were known to him prior to pleading guilty. Counsel was not constitutionally ineffective and there is no prejudice. *See generally United States v. Waucaush*, 230 F.3d 1361, at *5 (6th Cir. Sept. 27, 2000). The Court denies ground one of Defendant's memorandum in support of § 2255 motion. (ECF No. 378)

### 3. Counsel's Alleged Failure To Investigate Defendant's Allegations That The Government And Its Investigative Branches Tampered with, Fabricated and Withheld Exculpatory Evidence And That Misconduct Occurred Before the Grand Jury

Defendant argues that he has a "fabrication of evidence" claim alleging that the Government knowingly fabricated evidence against him and that there is a reasonable likelihood that the false evidence could have affected the judgment of the grand jury. (ECF No. 378 at 5.) One of Defendant's arguments is that the government falsely led the grand jury to believe that "BZP" is the same as "Ecstasy/Molly." (ECF No. 378 at 5.) Specifically, that the special agent who testified at the grand jury, falsely testified that BZP was the same as ecstasy. (ECF No. 378 at 5 and Ex. 4.)

As the government points out, the Court considered a similar argument with Defendant's motion to dismiss the indictment (ECF No. 322) and noted that while the "case agent admittedly made a mistake when testifying (referring to the lab result generically as 'Molly MDNA' instead of 'BZP')", there was no perjury or materially misleading statement and no prejudice to Defendant. (ECF No. 347 at 9.) BZP was the only controlled substance listed in the indictment with respect to the pill/powder counts. When the Court considered this argument earlier, it concluded that there was no confusion that this case was about Defendants offering what the Defendants referred to as Molly powder and ecstasy pills for

sale, in which BZP was the controlled substance used as the stimulant. (ECF No. 347 at 10.) The Court also pointed out that during grand jury testimony, the case agent testified about multiple seizures of powder and pills and, except for the July 29, 2013 transaction, correctly referred to the lab results testing positive for BZP, instead of the more generic reference to Molly. (ECF No. 347 at 10.) Even with respect to the instance cited in Defendant's § 2255 motion, the agent testified that the powder and pills tested as "BZP" or "Benzylpiperazine".[2] (Ex. 4, Tr. at 29, ECF No. 378.)

Defendant also argues that in order for a Defendant to be guilty of "knowingly" possessing a controlled substance, "the Defendant must 'know' that the substance possessed is what the government is alleging was possessed." (ECF no. 378 at 6.) As the Court pointed out in its prior Opinion and Order on this issue, "the Sixth Circuit Criminal Pattern Jury Instruction 14.05 provides, to be guilty of a drug trafficking conspiracy under 21 U.S.C. § 846, Boston Jr. did not even have to know that the drug involved was BZP. It is enough that he knew that the material was some kind of controlled substance." (ECF No. 347, at 11 (*citing* Sixth Circuit Criminal Pattern Jury Instruction 14.05)); *see also United*

---

[2] Defendant relies on *United States v. Beckley*, No. 10-1968, 515 Fed. Appx. 373 (6th Cir. Feb. 13, 2013), to argue that BZP does not mimic ecstasy or Molly and is not associated with Ecstasy. In *Beckley*, the district court calculated a guidelines range based on a determination that BZP most closely resembled methylenedioxymethamphetamine (more commonly known as ecstasy). The court of appeals held that there was no evidence to support this finding and remanded for recalculation of the Guidelines range and resentencing. *Beckley* is distinguishable in that *Beckley* arose prior to BZP being added to the Guidelines Drug Equivalency Tables, added just prior to the Sixth Circuit's consideration of the district court's equivalency findings with respect to BZP, and in this Defendant's case, as both the government pointed out and the Court explained in its prior opinion and order (ECF No. 347), BZP was the only controlled substance involved in this case when it was presented to the Grand Jury and as listed in the indictment. (ECF No. 347 at 9-10.)

*States v. Mahaffey*, No. 19-6061, 2020 WL 7414640, at *1 (6th Cir. Dec. 18, 2020) (upholding precedent of nearly twenty years, wherein the Sixth Circuit "has held that a drug-trafficking conviction under 21 U.S.C. § 841 does not require proof that the defendant knew the type or quantity of controlled substance involved in the offense").

Defendant also argues that the special agent falsely testified that there were two interviews with the cooperating defendant (CD) (July 19 and July 29, 2013), rather than three, including an alleged first interview on June 21, 2013. (ECF No. 378 at 6.) A report of the July 19, 2013, and July 29, 2013 interviews was previously provided to the Court as a sealed exhibit in response to Defendant's motion to dismiss the indictment. (Ex. 8 *sealed*, ECF No. 332-9.) The June 21, 2013 date was the date the cooperating defendant was recorded meeting with Defendant's father, Defendant Boston Sr., at S&B Computer; Defendant acknowledges this in his memorandum at page 8.[3] Defendant also alleges that "[o]n June 21, 2013 the HSI investigation report said that the controlling agent and [a Detroit police officer] interviewed the CI." (ECF No. 378 at 9.) The exhibit provided by Defendant states that "[o]n June 21, 2013, an individual was observed via the pole cam. . ." and that "[a]gents ultimately identified the individual" as a CD. (Def.'s Ex. 9, ECF No. 378 at 72 of 100.) It goes on to say that "[t]he controlling agent interviewed the CD," yet does not state exactly when the agents "ultimately" identified the individual nor does it provide evidence that the interview occurred on the date alleged by Defendant. (*Id.*)

---

[3] Defendant alleges that "[a]fter the start of the investigation on June 21, 2013, a white male was said to be observed on polecam hugging Boston Sr. An agent observing the meeting on the pole came (sic) contacted [the special agent] and she drove up to S&B computers to run the mans (sic) license plate only to discover that he was the DEA and HSI informant (Note: Movant believes the CI was always known and that he was a plant)." (ECF No. 378 at 8-9.)

Further, Defendant's exhibit next provides that "[t]he controlling agent interviewed the CD. The CD told the agent, and your Affiant, without being told of the observed meeting at S&B, about a father and son selling narcotics out of a computer store near the Lodge Service Drive . . . ." (Def.'s Ex. 9, ECF No. 378.) This information is consistent with information noted to have been provided by the CD at the July 19, 2013 interview therefore failing to establish Defendant's allegation of a June 21 interview. (Def.'s Ex. 8, ECF No. 378 at 69 of 100.)

The Court already concluded that the indictment was valid on its face, and returned by a legally constituted and unbiased grand jury. (ECF No. 347 at p. 4.) The Court further found that the record did not support prosecutorial misconduct nor misconduct warranting dismissal of the indictment. (ECF No. 347, at 5.) Defendant has not shown that counsel was deficient in failing to raise these issues, nor that he was prejudiced by counsel's performance.

**B.  Defendant's Allegation Of Entrapment**

Defendant argues that the government entrapped him and his father into committing the charged illegal acts. (ECF No. 378.) As the government points out, "[t]he argument of entrapment is a defense based on statutory interpretation and is therefore a non-constitutional claim." *See Graves v. United States*, 2014 WL 2604561, at *1 (W.D. Mich. June 11, 2014) (citing *Sosa v. Jones*, 389 F.3d 644, 647-49 (6th Cir. 2004)). To prevail on a § 2255 motion alleging non-constitutional error, Defendant must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* at *1 (citing *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999)).

Because Defendant failed to raise the issue of entrapment on appeal, he "is procedurally barred from raising the issue in a § 2255 motion unless he can establish cause [for not raising the claim on appeal] and prejudice, or that he is actually innocent." *Id.* at *5 (citations omitted); *see also Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019); *Moody v. United States*, 958 F.3d 485, 492 (6th Cir. 2020); and *United States v. West*, 2017 WL 130286, at *2 (E.D. Mich. Jan. 13, 2017) (finding that the failure to raise an issue on direct appeal constitutes procedural default).

Defendant does not provide information to show "cause" for failing to raise these issues on direct appeal. The Court will consider this defaulted argument to show that it, like those above, fails to warrant relief under § 2255. To show entrapment requires two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). The government provided evidence that Defendant had already ordered BZP using the fake name "Tim Allen," had ordered a pill press using the fake name "Tracy Morgan" and took delivery of the pill press under the same fake name on May 17, 2013, prior to the CD's first action on behalf of the government in this case. (ECF No. 360 at 4, and 360-6; *see also* Sealed Exhibit 8, Government's Response Opposing Boston Jr.'s Motion to Dismiss Indictment, ECF No. 332-9 (discussing CD's first action on behalf of the government on July 29, 2013).) The government provided evidence that pill manufacturing commenced shortly after delivery of the pill press, and on July 8, 2013, Defendant was recorded delivering 2,080 pills containing BZP to one of his associates; the pills were hidden in a potato chip bag. (ECF No. 360 at 7-8.)

Defendant provides no evidence that a decision by counsel not to present a defense

of entrapment was unsound or unreasonable. Counsel's failure to raise an objection on this basis is not deficient performance. Defendant has not established that he was provided constitutionally ineffective assistance of counsel and he has not established cause for the procedural default. Even assuming he had established cause, he has not established resulting prejudice.

Finally, Defendant has not established actual innocence. Defendant testified at the plea hearing that he had agreed with other people to distribute benzylpiperazine, he knew that BZP was an illegal drug, that this occurred between January 2013 and July 10th of 2014, and that the BZP involved in this case was in excess of 58,000 grams. (Plea Hearing Tr. at 16-17, ECF No. 324.)

The Court denies Defendant's § 2255 motion to vacate, set aside or correct his sentence.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22(b) provides that a petitioner cannot take an appeal in a § 2255 proceeding unless a certificate of appealability is issued under 28 U.S.C. § 2253(c). Rule 11 of the Rules Governing Section 2255 Proceedings requires that a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks and citation omitted).

Because Defendant has failed to show that reasonable jurists could debate whether

15

his petition should have been resolved in a different matter, the Court denies him a certificate of appealability.

## V. Conclusion

For the reasons set forth herein, the Court denies Defendant's 28 U.S.C. § 2255 motion (ECF Nos. 374, 378.)

**SO ORDERED.**

                               s/Nancy G. Edmunds
                               Nancy G. Edmunds
                               United States District Judge

Dated: January 12, 2021

I hereby certify that a copy of the foregoing document was served upon parties and counsel of record on January 12, 2021, by electronic and/or ordinary mail.

                               s/Lisa Bartlett
                               Case Manager